*E-FILED 03-25-2011*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHEN REED GODAR,<br><br>    Plaintiff,<br> v.<br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | Case No. C09-00736 HRL<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**[Re: Docket Nos. 19, 20]** |

Plaintiff Stephen Reed Godar appeals a final decision by the Commissioner denying his application for disability insurance benefits under the Social Security Act. Presently before this court are the parties' cross-motions for summary judgment, which were deemed submitted without oral argument. All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636(c); FED. R. CIV. P. 73. Upon consideration of the papers filed by the parties, and for the reasons set forth below, plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted.

I. BACKGROUND

Born in 1949, Godar was 53 years old at the alleged onset of his claimed disability and 59 years old at the time the Administrative Law Judge ("ALJ") rendered the decision under consideration here. He alleges that he has been disabled since October 1, 2002 due to

degenerative disc disease, loss of nerve coordination, extreme pain, and loss of muscle control in the left leg. (AR 95). He completed high school and some college, and received electronics training in the Air Force. (AR 33, 100). His past work history includes work as a pick-up driver, sales scheduler, and electronics technician. (AR 102).

There is no dispute that the relevant time period is from October 1, 2002 (the alleged onset of plaintiff's claimed disability) through December 31, 2005 (when, for purposes of the Social Security Act, plaintiff's insured status expired). Thus, the overarching issue before the ALJ was whether Godar showed that he was entitled to the benefits sought by establishing disability on or before December 31, 2005.

Godar's application for benefits was denied initially and upon reconsideration; and, at Godar's request, a hearing was held before an ALJ on August 6, 2008. On October 1, 2008, the ALJ issued a decision denying benefits. The ALJ evaluated plaintiff's condition pursuant to the required five-step, sequential framework. 20 C.F.R. § 404.1520(a). At step one, he found that plaintiff did not engage in substantial gainful activity during the relevant period. At step two, he found that, through December 31, 2005, plaintiff had "degenerative disease of the lumbar spine; the residual effects of lumbar disk surgery in 1989; and acromioclavicular degenerative joint disease of the left shoulder" and that these were "severe" impairments. However, at step three, the ALJ concluded that plaintiff did not have an impairment or combination of impairments listed in or medically equal to one listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. At step four, the ALJ concluded that Godar has the residual functional capacity ("RFC") to perform the requirements of his past relevant work as a scheduler and that he was not disabled, within the meaning of the Social Security Act, at any time from October 1, 2002 through December 31, 2005.

The Appeals Council denied plaintiff's request for review, and the ALJ's decision became the Commissioner's final decision.

Plaintiff now seeks judicial review of that decision.

2

## II.  LEGAL STANDARD

A.  <u>Standard for Review of the Commissioner's Decision</u>

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995).  In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523; *see also Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).  When determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the Commissioner.  *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

B.  <u>Standard for Determining Disability</u>

A person is "disabled" for purposes of receiving Social Security benefits if he is unable to engage in a substantially gainful activity due to a physical or mental impairment that has lasted for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  Social Security disability cases are evaluated under a five-step test.  20 C.F.R. § 404.1520(a)(4).  In the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is not so engaged, the second step requires the ALJ to determine whether the claimant has a "severe" impairment which significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  If the ALJ concludes the claimant does not have a "severe" impairment, the claimant is not "disabled" and the claim is denied.  *Id*.  If the claimant has a "severe" impairment, the third step requires the ALJ to determine whether the impairment meets or

equals the criteria of an impairment listed in the relevant regulation. 20 C.F.R. Part 404, subpart P, Appendix 1; 20 C.F.R. § 404.1520(a)(4)(iii). In the fourth step, the Commissioner must determine whether the claimant has sufficient "residual functional capacity" to perform his past work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not "disabled" and the claim must be denied. *Id*. The claimant has the burden of proving that he is unable to perform past relevant work. *Drouin*, 966 F.2d at 1257. If the claimant meets this burden, he has presented a prima facie case of disability. *Id*. In the fifth step of the analysis, the burden shifts to the Commissioner to establish that the claimant can perform other substantial gainful work. 20 CFR § 404.1520(a)(4)(v). Otherwise, the claimant will be found disabled. *Id*.

### III. DISCUSSION

Godar argues that the ALJ erred by (1) failing to find that he has a "severe" impairment of the left knee; (2) discounting his symptom-reporting; (3) improperly weighing medical opinions; and (4) concluding that plaintiff could perform his past work as a scheduler. Defendant asserts that the ALJ's decision is supported by substantial evidence in the record and is free of legal error.

A.   <u>The ALJ's Step 2 Findings</u>

The ALJ noted Godar's left knee impairments, including the medical expert's testimony that plaintiff had internal derangement of the left knee. (AR 13). Godar claims that the ALJ erred by concluding that his only "severe" impairments were in his lower back and left shoulder. He contends that the ALJ ignored substantial evidence showing that he also suffered from a "severe" left knee impairment, which Godar says is a separate cause of mental limitations (i.e., a short attention span due to distracting pain).

A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citing *Sample v. Schweiker*, 694 F.2d 639, 642-43 (9th Cir. 1982)). "The applicant must show that he is precluded from engaging in not only his 'previous work,' but also from

4

performing 'any other kind of substantial gainful work' due to such impairment." *Id*. (citing 42 U.S.C. § 423(d)(1)(A)).

Here, plaintiff asserts that the ALJ erred by failing to include his left knee among his "severe" impairments, citing Dr. Stetz's December 2002 report stating that "[t]he fundamental problem is that [Godar] has nerve damage to his left leg." (AR 251-52). Godar also points out that a December 2003 MRI showed a medial meniscus tear (and other abnormalities); cartilage thinning on the patella and on weight-bearing part of the medial femoral condyle; a small Baker cyst; and tendinopathy of the quadriceps and patella. (AR 497).

Viewing the record as a whole, there is substantial evidence in the record supporting the ALJ's conclusion that plaintiff's left knee was not among his "severe" impairments. In a December 2002 report, just after the alleged onset of Godar's claimed disability, Dr. Gold concluded that Godar had a "negative left knee," noting that there was "no evidence of fracture, subluxation, or other bone abnormality. No degenerative change is noted. The soft tissue are unremarkable, without evidence of effusion." (AR 498). Additionally, in March 2003, Dr. Jamali, an orthopedic surgeon, found that plaintiff had "left knee pain of unknown etiology," noting that Godar's knee tested negative on several tests. (AR 248). Dr. Jamali recommended strengthening and hamstring stretching exercises. (*Id.*). A May 2003 MRI showed a tear of the posterior horn and medial meniscus, but no surgery was recommended in October 2003. (AR 11, 543). The record also indicates that in October 2003, another orthopedic surgeon, Dr. Faisal, reported that "most of [Godar's] symptoms today that he describes are related to instability and not so much pain." (AR 241). Dr. Faisal further noted that plaintiff's left knee pain was "more related to his ongoing back problem, which he has been chronically suffering from. His symptoms do not seem to be localized to his knee and his giving away, buckling, and instability may very well be secondary to weakness in the left leg." (AR 242). Concluding that Godar's reported pain "does not seem to be focussed [sic] on the knee," Dr. Faisal prescribed a two-month course of Neurontin. (AR 242). Godar points out that the July 2005 report of his treating physician, Dr. Nguyen-Duc, indicated that Godar was experiencing back pain radiating to both legs. (AR 207). That same report, however, also states that Godar was continuing to do

1  exercises for his left knee pain; that Godar reported no pain at that time; and that no surgery was
2  recommended. (AR 207-208). And, as noted by the ALJ, in December 2004 plaintiff reported
3  that he no longer had left knee pain. (AR 11, 219). Plaintiff asserts that the left knee pain later
4  returned in November 2007 (Pltf's Mot. at 5 n.4; AR 543-44), but this was after the relevant
5  period expired. Moreover, in his RFC findings, the ALJ did account for limited ability to use
6  foot pedals with the lower left extremity, stand/walk, climb stairs, bend, kneel, crouch, crawl,
7  stoop. (AR 13).

8  Upon consideration of the record as a whole, the court finds that there is substantial
9  evidence in the record supporting the ALJ's conclusion that plaintiff's left knee was not among
10 his "severe" impairments.

11 B.     Adverse Credibility Determination

12 Godar contends that the ALJ failed to provide sufficiently specific reasons for partially
13 discrediting his assertions about his symptoms. Here, plaintiff argues that the ALJ did not
14 acknowledge Godar's written statements; did not refer to treating physician Dr. Nguyen-Duc's
15 statement that Godar was not a malingerer; and failed to make adequate findings about written
16 statements made by Godar's ex-wife, Catherine Arlin.

17 An ALJ conducts a two-step analysis in assessing subjective testimony. First, "the
18 claimant 'must produce objective medical evidence of an underlying impairment' or
19 impairments that could reasonably be expected to produce some degree of symptom."
20 *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d
21 1273, 1281-82 (9th Cir. 1996)). If the claimant does so, and there is no affirmative evidence of
22 malingering, then the ALJ can reject the claimant's testimony as to the severity of the
23 symptoms "'only by offering specific, clear and convincing reasons for doing so.'" *Id*. (quoting
24 *Smolen*, 80 F.3d at 1283-84). That is, the ALJ must "make 'a credibility determination with
25 findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily
26 discredit claimant's testimony.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.
27 2002)). In weighing a claimant's credibility, an ALJ may consider several factors, including (1)
28 ordinary techniques of credibility evaluation, such as the clamant's reputation for lying, prior

inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Id*. "If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'" *Id*. (quoting *Thomas*, 278 F.3d at 959).

Godar argues that the ALJ failed to follow the required two-step analysis. The ALJ, however, specifically referenced the two-step analytical framework in his decision. (AR 14). True, the ALJ did not expressly say that plaintiff presented evidence of impairments that could reasonably be expected to produce some of the symptoms alleged. But the ALJ apparently found that the first prong was satisfied because he proceeded with, and focused his discussion on, the second prong of the analysis. This court finds no error here.

The ALJ partially discounted plaintiff's symptom-reporting, stating that "the allegations by the claimant as to the intensity, persistence, and limiting effects of his symptoms are not well supported by probative evidence and are not wholly credible." (AR 14). Here, the ALJ explained:

> there are discrepancies between the claimant's assertions and the degree of medical treatment (including medications) sought and obtained, the diagnostic tests and findings made on examination, the level of restrictions on the claimant in the DDS physician opinions of record and in the medical expert testimony; and the level of follow-up treatment, including diagnostic testing, ordered by the treating physicians during the time period relevant to this decision.

(*Id*.).

The record as a whole demonstrates that the ALJ did not discount Godar's assertions arbitrarily, but rather, rejected his symptom-reporting on permissible grounds. The ALJ summarized the medical evidence, as well as Godar's testimony and assertions, including Godar's testimony that he could perform a job with a sit/stand option, provided that he could take three to eight weeks off per year if he were incapacitated. (AR 13, 39-40). Throughout his decision, the ALJ cited specific evidence supporting his adverse credibility determination. The ALJ noted that Godar has had "extensive pain treatment and physical therapy at the Veterans' Administration." (AR 10). He also noted MRIs from December 2003 and May 2003 revealing

7

1  multilevel degenerative disc disease (among other abnormalities), as well as a January 2005
2  MRI showing degenerative disease and post-surgical changes of the lumbar spine. (AR 11, 495,
3  543). The ALJ also observed, however, that examining physician Dr. Salamacha concluded that
4  Godar could stand/walk for two hours in the morning and two hours in the afternoon in fifteen-
5  to thirty-minute intervals as tolerated, with five minutes rest between intervals, and had no
6  restrictions in sitting, except that plaintiff needs to be able to change positions as needed for
7  comfort. (AR 11-12). The ALJ also noted the testimony of medical expert witness Dr. Jensen,
8  who found that Godar could stand/walk for four hours in an eight-hour workday and sit for six
9  hours in an eight-hour workday, with ability to change positions every thirty minutes as needed.
10 (AR 13, 45). The ALJ's decision further notes December 2004 medical records in which
11 plaintiff reported that he no longer had pain in his left knee, as well as an October 2005 medical
12 record in which plaintiff reported that while the lower grade pain was still present with hip and
13 testicular pain, "the pain in his back is considerably better," that he walks about 100 yards from
14 eight to ten times a day; he does pool therapy; and "his pain is a 3/10." (AR 11, 200, 219).
15 Godar contends that the ALJ failed to discuss other evidence supporting his credibility, such as
16 the consistency between his written statements and oral testimony and treating physician Dr.
17 Duc's opinion that plaintiff is not a malingerer. Viewing the record as a whole, however, there
18 is substantial evidence to support the ALJ's credibility determination as to plaintiff's symptom-
19 reporting.

20      Godar maintains that the ALJ failed to make adequate findings with respect to the lay
21 witness statement of Godar's ex-wife, Catherine Arlin. (AR 133-140). Lay witness testimony
22 is competent evidence that cannot be disregarded without comment. *Stout v. Comm'r Soc. Sec.*
23 *Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). If an ALJ discounts lay witness testimony, "'he
24 must give reasons that are germane to each witness.'" *Id.* (quoting *Dodrill v. Shalala*, 12 F.3d
25 915, 919 (9th Cir. 1993); *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay
26 testimony as to a claimant's symptoms is competent evidence that an ALJ must take into
27 account, unless he or she expressly determines to disregard such testimony and gives reasons
28 germane to each witness for doing so.").

8

1          Here, although the ALJ did not mention Arlin by name, his written decision expressly
2   says that he considered "the third party statements provided by the claimant's friends and/or
3   family members in this matter (Exhibits in section E)." (AR 14). In discounting those
4   statements, the ALJ concluded that "the lay witness statements therein do not change the
5   outcome in this matter." (*Id.*).
6          Arlin described Godar's daily activities as "Has a cup of coffee-breakfast-watch news-
7   checks email-calls folks-reads-watch[e]s TV-Has snack-Takes Nap-Interacts with new 1st
8   grandson-watches television-Has dinner-watches TV-Goes to bed." (AR 133). She further
9   stated that Godar does no yard work and minimal housework; and goes outside depending on
10  the weather, but does not go out on some days because of depression and back pain. (AR 135-
11  36). She opined that Godar has constant back pain. And, as a result of Godar's condition, Arlin
12  stated that plaintiff has disrupted sleep patterns; prepares only simple meals one or two times
13  per day; standing and bending are painful for him; and he "can't sit for any length of time
14  making going to movie difficult." (AR 137). Arlin also stated, however, that she sees Godar
15  only three days per month. (AR 133). She did not know how plaintiff's condition affected his
16  ability to perform personal care, the length of time it took plaintiff to do housework, or how
17  often and how long it took plaintiff to go shopping. Moreover, as noted by the ALJ in his
18  decision, the relevant time period expired on December 31, 2005. Arlin's statement is dated
19  approximately ten months later in October 2006. Thus, viewing the record as a whole, this
20  court finds that substantial evidence supports the ALJ's decision to discount Arlin's testimony.
21  C.     <u>Weighing Medical Opinions</u>
22         Plaintiff argues that the ALJ was inconsistent in weighing certain medical opinions.
23  Specifically, Godar contends that the ALJ both relied upon and discredited the opinion of
24  examining physician Dr. Salamacha. Here, Godar argues that the ALJ essentially adopted Dr.
25  Salamacha's opinion because (1) the ALJ credited the opinion of testifying medical expert Dr.
26  Jensen; and (2) Dr. Jensen more or less agreed with Dr. Salamacha's findings on Godar's RFC.
27         The ALJ properly discounted Dr. Salamacha's opinion because it was dated in October
28  2006, some ten months after the relevant period under consideration. (AR 12). Dr. Jensen

9

1  testified based upon his review of the record evidence. (AR 41). And, the ALJ examined Dr.
2  Jensen at the hearing, specifically focusing on the time period leading up to December 31, 2005,
3  Godar's last date insured. (AR 43-49). The court finds no error here. *See Andrews v. Shalala*,
4  53 F.3d 1035, 1041 (9th Cir. 1995) (stating that "the report of a nonexamining, nontreating
5  physician need not be discounted when it is not contradicted by *all other evidence* in the
6  record.") (quotations and citations omitted).

7  D.   The ALJ's Step 4 Findings

8  At step four of the sequential disability evaluation, the ALJ concluded that plaintiff
9  could perform his past work as a scheduler. Godar contends that this finding is not supported
10 by substantial evidence because it is contrary to the testimony of the vocational expert (VE).

11 The claimant, at the fourth step of the sequential analysis, has the burden of proving that
12 he is unable to perform his past relevant work. *Drouin*, 966 F.2d at 1257; *see also* 20 C.F.R. §
13 40.1560(b)(2) (indicating that the ALJ will determine whether the claimant can perform the
14 claimant's past relevant work "either as the claimant actually performed it or as generally
15 performed in the national economy."). If the claimant establishes that he cannot perform his
16 previous job, then the burden of proof shifts to the Commissioner, at the fifth step of the
17 analysis, to show that the claimant can do other kinds of work. *Drouin*, 966 F.2d at 1257;
18 *Matthews*, 10 F.3d at 681. The testimony of a vocational expert is relevant and sometimes
19 mandatory at the fifth step of the analysis. *See Matthews*, 10 F.3d at 681 ("Without *other*
20 *reliable evidence* of a claimant's ability to perform specific jobs, the Secretary must use a
21 vocational expert to meet that burden.") (citations omitted). But, while an ALJ may consider a
22 vocational expert's testimony in determining whether a claimant can perform his past relevant
23 work, an ALJ is not required to call a vocational expert at the fourth step. *See id.* (holding that
24 where plaintiff failed to show that he was unable to return to his previous job, the burden of
25 proof remained with plaintiff, and "[t]he vocational expert's testimony was thus useful, but not
26 required.").

27 Here, the VE testified that the scheduler job, listed in the Dictionary of Occupational
28 Titles as "appointment clerk," is classified as a "sedentary" position "with an SVP [specific

10

vocational preparation] of three." (AR 54). The VE further testified that a person with Godar's and vocational background and residual functional capacity (as described by Dr. Salamacha) would be unable to perform his past work, including his scheduler job. (AR 55). The ALJ rejected the VE's opinion "because the claimant testified that, as a scheduler, he was usually seated but he could get up, stand and pace." (AR 15). Indeed, Godar stated that as a scheduler, he set appointments nationally and internationally, did no lifting (except, perhaps, a piece of paper), and "had the luxury of being able to stand and pace as needed." (AR 35). A claimant's own testimony about his work duties is "highly probative" evidence. *See Matthews*, 10 F.3d at 681. The ALJ permissibly relied on Godar's own description of his work duties as a scheduler in concluding that he could perform those jobs even with his impairments.

## IV.  ORDER

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's motion for summary judgment is DENIED.
2. Defendant's cross-motion for summary judgment is GRANTED.
3. The Clerk of the Court shall close the file.

Dated:    March 25, 2011

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

1   5:09-cv-00736-HRL Notice has been electronically mailed to:

2   James Hunt Miller     jim_miller0@yahoo.com

3   Jeffrey T Chen     Jeffrey.Chen@ssa.gov

4   Leo Rufino Montenegro     Leo.R.Montenegro@ssa.gov

5   Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.